UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AVA MISSELDINE,<br><br>Defendant. | CASE NO. 2:22-cr-168<br><br>JUDGE WATSON<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

The defendant stole the identity of a deceased baby and used it for almost 20 years, culminating in her theft of more than $1.5 million in federal pandemic relief funds. She has six prior criminal convictions for theft and similar offenses. The federal sentencing guidelines recommend that she spend approximately eight or nine years in prison. With this in mind, the United States respectfully recommends that the Court sentence the defendant to a substantial term of imprisonment.

### *The guideline range*

The Probation department calculated a guideline range of 110 to 137 months in prison. This is based on an offense level of 28 and a criminal history category of IV. (Presentence report ("PSR") ¶ 119).

The defendant raises two objections to this calculation. First, the defendant asserts that the enhancement in guidelines section 2B1.1(b)(12) should not apply here. (PSR page 31). For reasons that can be addressed in greater detail at the sentencing hearing, the government does not object if the Court omits this enhancement in this case.

1

Second, the defendant asserts that her prior criminal convictions should not score any criminal history points. (PSR page 32). The government disagrees with this objection. The Probation department correctly calculated the defendant's criminal history score. The government's detailed argument on this point is contained in the attachment to the PSR (filed as ECF no. 43-1) and will not be repeated verbatim in this memorandum, in the interest of brevity. In summary, the "commencement of the instant offense" in this case was in 2003, when the defendant began using the deceased infant's identity. This approach is consistent with the plain language of the guidelines (which takes an expansive view of the "commencement of the instant offense") and with other recent identity theft cases in this district, several of which are cited and described in the government's detailed argument attached to the PSR. (ECF no. 43-1.) In conclusion, the defendant's criminal history was properly scored in the PSR and the defendant's objection on this issue should be denied.

Thus, the defendant's guideline range is either 110 to 137 months (offense level 28, criminal history category IV) if the Court applies the enhancement in section 2B1.1(b)(12), or else the range is 92 to 115 months (offense level 26, criminal history category IV) if the Court does not apply that enhancement.

*The nature, circumstances, and seriousness of the offense*

The nature, circumstances, and seriousness of the offense justify a substantial prison term. See 18 U.S.C. § 3553(a)(1), (a)(2)(A). The defendant committed a long-running and egregious fraud in which she stole the identity of a deceased baby and defrauded the federal government of more than $1.5 million.

2

The defendant stole the identity of a deceased baby in 2003 and used that identity to obtain a Social Security card and Ohio driver's license. She renewed these identity documents over the ensuing years. She obtained a U.S. passport in 2007 with the deceased baby's name and the defendant's photo on it. She obtained a student pilot certificate from the Federal Aviation Administration under the deceased baby's identity. She obtained a mortgage under the deceased baby's identity, which resulted in foreclosure. When she was confronted about her use of two names in a Bankruptcy Court proceeding in 2014, she lied and claimed that she was adopted. In 2021, she applied to renew the U.S. passport with the deceased baby's name and the defendant's photo on it. The application was flagged for fraud, which led to an investigation. The investigation revealed that the defendant obtained 15 pandemic relief loans totaling over $1.5 million. She obtained some loans under her own name and some under the deceased baby's name. To obtain these loans, she submitted forged documents such as bank statements and articles of incorporation. She used the loan proceeds to buy houses in Michigan and Utah for $327,500 and $647,500, respectively. The defendant acquired these houses in the name of a shell company: "Mauna Capital Management, LTD LLC." In summary, this was a lengthy and egregious offense that caused substantial financial harm. This conduct warrants a substantial prison sentence.

The government notes that the defendant's friend "believed [the defendant] was attempting to disassociate from her childhood by taking on a second identity" (PSR ¶ 85) and the defendant's father "believed [the defendant] was trying to escape her past and reality by hiding behind this false identity" (PSR ¶ 91). But these rationalizations do not stand up to scrutiny. After all, the defendant continued to use her true identity in tandem with her false identity.

3

Whatever hardships the defendant may have faced in her youth, those experiences certainly do not excuse her theft of over $1.5 million decades later—under both her true identity and her alias—in order to finance two comfortable houses and a more luxurious lifestyle for herself.

### *Specific deterrence*

A substantial prison sentence in this case is also justified by the need to protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a)(2)(C).

The defendant has six prior criminal convictions for theft and similar offenses:

- a 1991 sentence for petty theft (PSR ¶ 63);

- a 1995 sentence for unauthorized use of property (PSR ¶ 64);

- a 1997 sentence of 6 years in prison for grand theft, forgery, and escape (PSR ¶ 65);

- a 2005 sentence for abusing her position as an employee at a grocery store to steal more than $10,000 (PSR ¶ 66);

- a 2005 sentence for unauthorized use of property; the defendant was convicted under the deceased baby's name in this case (PSR ¶ 67); and

- a 2007 sentence for theft; the defendant was convicted under the deceased baby's name in this case (PSR ¶ 68).

It is especially concerning that she sustained two criminal convictions under the identity of the deceased baby whose identity she stole. Chillingly, a child who died in infancy now has a criminal record because of this defendant's conduct. This defendant's prior criminal convictions have clearly not taught her to follow the law. At this point, a substantial prison sentence is warranted.

4

### *The defendant's dishonesty*

The defendant's history of dishonesty is part of her "history and characteristics," which the Court must consider.  18 U.S.C. § 3553(a)(1).  Obviously, this entire case centers on the defendant's dishonesty, from her use of a false identity, to her falsified loan applications.  What is striking about this case is the brazen and elaborate nature of the defendant's lies.

For example, when she first obtained a Social Security card in the identity of the deceased infant, she falsely told the Social Security Administration that her name was Brie Bourgeois, she had been homeschooled her entire life, she had never held a job, and she finally needed a Social Security card to attend college (PSR ¶ 12).

Later, when she was directly asked about her use of two names in a bankruptcy hearing, she concocted an elaborate tale in which she claimed to be adopted, with one name being her birth name and the other name being her adoptive name (PSR ¶ 17).

The defendant has also told blatant lies, even when she has used her true name.  For example, in a newspaper interview a few years ago, she falsely claimed that her "family owns a tea company in Hawaii," she "came to Columbus from Hawaii to study chemical engineering at Ohio State," and "after years of conducting cancer research in the lab," she started a bakery.[1]  According to the PSR, however, the defendant was raised in Ohio, has no connection to Hawaii, and has no background in chemical engineering or cancer research (PSR ¶¶ 74, 103-110).

More recently, when she was arrested in this case, the defendant told the Pretrial Services officer that she "became unemployed due to the current charges," and "prior to being

---

[1] See https://www.columbusmonthly.com/story/lifestyle/food/2014/05/20/closing-time-ava-misseldine-koko/22789135007/.  In another newspaper interview, the defendant falsely claimed to be a former chemical engineer from Hawaii whose family had owned a tea company for generations.  See https://www.dispatch.com/story/news/local/gahanna-news/2012/05/23/organic-bakery-tea-salon-to/23225693007/.

5

unemployed, she was the manager of the Zion National Park Visitor Center." (Pretrial Services Report, ECF no. 8, at page 2.) However, an inquiry to Zion National Park revealed that the defendant actually quit her job on June 2, 2022, which was one week before she was arrested on June 9, 2022. (See attached document from her former employer.) The defendant also apparently did not mention any of this to the Probation officer who prepared the PSR, as there is no mention in the PSR of the defendant's employment at Zion National Park (PSR ¶ 106).

Sadly, the PSR indicates that the defendant even deceived one of her closest friends by leading him to believe that she "received a large amount of money from a family member which allowed her to purchase the home in Utah," when in reality she had stolen over a million dollars from the American taxpayers to buy the Utah house and Michigan house (PSR ¶ 85). In summary, this defendant is an inveterate liar who deserves a substantial prison sentence.

### *General deterrence*

The need to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct also justify a substantial prison sentence in this case. See 18 U.S.C. § 3553(a)(2)(A)-(B). Identity fraud and fraud against government programs are all too common. The Court can deter other people from committing these kinds of offenses by imposing a significant prison sentence in this case.

### *Mitigation*

The government acknowledges that the defendant—with the aid and advice of her counsel—has been cooperative in returning a significant amount of the stolen money through the sale of the two houses she bought with the stolen money. Although the government would have seized these properties and recouped the money even without the defendant's consent, the Court

may wish to consider whether the defendant's cooperation in forfeiting these houses and reducing her debt warrants a sentence slightly below the guideline range. That being said, the defendant's acceptance of responsibility—which only occurred after she was arrested—does not outweigh her long-running use of a deceased baby's identity and her recent theft of $1.5 million for the sole purpose of buying two nice houses and living a more luxurious lifestyle. The Court should impose a substantial term of incarceration in this case.

## *Conclusion*

For the foregoing reasons, the United States respectfully requests that the Court impose a substantial term of imprisonment.

**Respectfully submitted,**

KENNETH L. PARKER
UNITED STATES ATTORNEY

*s/ Timothy Landry*
TIMOTHY LANDRY (MA 669554)
Special Assistant United States Attorney
221 East 4th Street, Suite 400
Cincinnati, OH 45202
Phone No.: (513) 684-3711
Email: Timothy.Landry@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on February 2, 2023, on all parties of record via the CM/ECF system.

*s/ Timothy Landry*
TIMOTHY LANDRY (MA 669554)
Special Assistant U.S. Attorney